NIBBELINK *v.* COOPERSVILLE STATE BANK.

1. TROVER AND CONVERSION—TRESPASS—DEMAND—GOOD FAITH.

   When one by a trespass takes the property of another and sells it, he is liable for the conversion and no demand is necessary, nor is the question of good faith or bad faith necessarily involved.

2. BANKRUPTCY—TITLE OF TRUSTEE.

   Upon an adjudication of bankruptcy and the appointment of a trustee, such trustee becomes vested with the title of the property of the bankrupt.

3. SAME—TITLE-RETAINING CONTRACTS.

   A trustee in bankruptcy takes no title to property sold to the bankrupt under a contract retaining title in the seller though the property may be in the possession of the bankrupt.

4. COURTS—CONFLICT OF LAWS—BANKRUPTCY—INSTRUMENTS AFFECTING TITLE OF CHATTELS.

   In action against parties who claimed an interest in certain chattels through trustee in bankruptcy, bankrupt and party to whom he had given a chattel mortgage subsequent to instrument relied upon by plaintiff as giving his assignors prior title, the nature of such instrument is determined by the State law.

5. BANKRUPTCY—PRESENTATION OF CLAIM—ELECTION OF REMEDIES.

   By presenting claim, under instrument involved in instant action for conversion, and procuring allowance as a secured claim by referee in bankruptcy, plaintiff's assignors waived their right to return of property, elected to treat title as having passed to the bankrupt, waived right to assert that their claim

* Continued from Vol. 285.

was for specific property and elected to treat their claim as security against property of the bankrupt.

6. SALES—ELECTION OF REMEDIES—CONDITIONAL SALES—JUDGMENT FOR PURCHASE PRICE.

Under a conditional sales contract by electing to take judgment against a purchaser for the purchase price a seller would elect to pass title to the property to the purchaser.

7. BANKRUPTCY—ABANDONMENT OF PROPERTY BY REFEREE—RELEGATION OF INTERESTED PARTIES TO STATE LAW.

Referee in bankruptcy who determines that a bankrupt has no equity in chattel-mortgaged property has a right to enter an order abandoning it; and the entry of such an order would relegate parties claiming an interest in such property to the law of the State for determination of their rights.

8. CHATTEL MORTGAGES—PRIORITY—EXECUTION.

As between chattel mortgages, neither of which is recorded, priority is ordinarily determined by priority of execution.

9. SAME—PRIORITY—RECORDING.

Defendant's chattel mortgage which had been duly filed *held*, to have priority of lien over unrecorded instrument, now claimed to be a title-retaining contract but which plaintiff had treated as a chattel mortgage, in common mortgagor's bankruptcy proceeding, although such unrecorded instrument was executed prior to defendant's chattel mortgage.

10. SAME—POWER OF PRIVATE SALE.

The power of private sale accorded under a chattel mortgage must be strictly construed and fairly executed.

11. SAME—PRIVATE SALE—NOTICE.

Under chattel mortgage requiring that, if mortgagee sold goods at public sale, several days' notice thereof be given, private sales without notice having been given *held*, valid where chattel mortgages did not require that notice be given and there is no evidence sales were not *bona fide*.

12. SAME—JUNIOR LIENOR'S RIGHT OF REDEMPTION.

As a condition precedent of junior lienor's right of redemption from sale by senior lienor under several chattel mortgages it is necessary that he discharge the superior lien.

Appeal from Ottawa; Miles (Fred T.), J. Submitted June 10, 1938. (Docket No. 85, Calendar No. 40,099.) Decided October 3, 1938.

Action by Henry Nibbelink against Coopersville State Bank, Henry Gemmen, John Gemmen and Raymond Schestag for conversion of cattle. Judgment for defendants. Plaintiff appeals. Affirmed.

*Frank Post*, for plaintiff.

*Leo C. Lillie*, for defendant Coopersville State Bank.

*Jarrett N. Clark*, for defendant Schestag.

POTTER, J. Plaintiff began suit as assignee of Seth Nibbelink and Mary Nibbelink. He alleges (1) that October 1, 1936, and theretofore defendants were in possession of 17 cows, of the value of $100 apiece, belonging to plaintiff, to be delivered to plaintiff on request, but that defendants, although often requested so to do, refused to deliver or turn over the cows to plaintiff and converted the same to their own use, to plaintiff's great damage; (2) that July 2, 1929, and thereafter, Seth Nibbelink was the owner of 4 cows and their increase by virtue of a title-retaining note of said date executed by defendant Raymond Schestag and August Schestag, as copartners, of the value of $100 apiece, all of which were in possession of defendants, to be delivered to Seth Nibbelink or to plaintiff upon request and, although often requested so to do, defendants have neglected and refused to deliver the same to plaintiff and converted the same to their own use, to plaintiff's damage; (3) that on or about November 20, 1931, and thereafter, Seth Nibbelink

and Mary Nibbelink were the owners of 10 cows by
virtue of a chattel mortgage of said date, executed
by Raymond Schestag and August Schestag; said
cows were of the value of $100 apiece and were in
possession of defendants and were to be delivered
to Seth Nibbelink and Mary Nibbelink when re-
quested so to do and, although often requested, de-
fendants have refused and neglected to deliver said
cows to Seth Nibbelink and Mary Nibbelink or to
plaintiff and have converted them to their own use,
to plaintiff's damage. The declaration alleges also
(a) that said chattel mortgage has been kept valid
and in force by proper filing and renewal affidavits;
and (b) that all the rights of said Seth Nibbelink
and Mary Nibbelink in said title-retaining note and
chattel mortgage aforementioned and the property
therein mentioned have been duly assigned to plain-
tiff. These three counts, or claims if they are not
counts but parts of one count, in plaintiff's declara-
tion proceed on the claim defendants converted
plaintiff's property. There are also the common
counts in assumpsit.

Defendant Raymond Schestag filed an answer and
the Coopersville State Bank also filed an answer,
each of these denying all of the material allegations
set forth in plaintiff's declaration and alleging that
plaintiff's right to recover was barred by proceed-
ings in bankruptcy in the United States district
court for the western district of Michigan. There
was judgment for defendants and plaintiff appeals.

The controversy now here had its inception in
written contract of July 2, 1929, as follows:

"$590                        July 2, 1929.
"On or before one year after date we promise to
pay to the order of Seth Nibbelink,
"Five hundred (ninety?) & 00/100........Dollars.

"Purchase price of four cows, title of same & increase to be in the name of Seth Nibbelink until note is fully paid.

"Value received with interest at seven per cent. per annum.

"SCHESTAG BROS.,
(by) AUGUST SCHESTAG."

Plaintiff contends this instrument is plain, unequivocal and intelligible in its terms (a) that the makers promise to pay to Seth Nibbelink or order $590 on or before one year after date; (b) that the real consideration for said note is the purchase price, $590, or 4 cows purchased by the Schestags; (c) that the title to the cows and their increase was to be and remain in the name of Seth Nibbelink until this promissory note was fully paid; (d) that, under the law, upon the payment in full of the price of the cows as stipulated, the 4 cows and their increase were to belong to the makers of the note.

There is a dispute whether or not the instrument of July 2, 1929, above quoted, evidences a conditional sale. It is contended by defendants it was not, but plaintiff contends the transaction was a conditional sale, and, as it makes no difference in the result, for the purposes of this case we treat it as a title-retaining contract in its inception.

Conditional sales contracts have been frequently before the court and, so far as their character as here involved is concerned, have been fully defined. *Young* v. *Phillips*, 203 Mich. 566; *Burroughs Adding Machine Co.* v. *Wieselberg*, 230 Mich. 15; *In re Petition for Dissolution of Parkstone Apartment Co.*, 243 Mich. 401; *Mills Novelty Co.* v. *Morett*, 266 Mich. 451. The distinction between conditional sales contracts and contracts evidencing transactions involving liens, chattel mortgages, or claims against the

property of owners thereof has been pointed out in the cases above cited.

Plaintiff claims that November 20, 1931, August and Raymond Schestag gave a chattel mortgage to Seth and Mary Nibbelink for $471.32, covering 10 cows, "all of which are outside of and form no part of the four cows and their increase of four which the second parties are already the owners by reason of purchase." Three things appear from this chattel mortgage: (a) that the mortgagors recognized the ownership of the cows involved in the title-retaining note of July 2, 1929, was in the Nibbelinks; (b) such cows and the increase thereof were not mortgaged by this chattel mortgage of November 20, 1931; and (c) all other cows, 10 in number, on the farm were chattel-mortgaged by the instrument of November 20, 1931, to Seth and Mary Nibbelink.

August 28, 1935, Raymond Schestag gave another chattel mortgage to Seth and Mary Nibbelink for $1,400, covering the crops on the farm. This chattel mortgage does not appear to be here involved, except that the payment of the $590 note bearing date July 2, 1929 (the title-retaining note above mentioned), and the interest thereon, was secured by this chattel mortgage.

November 20, 1930, Eva Schestag and August Schestag, mother and son, gave a chattel mortgage to the Coopersville Cooperative Elevator Company for $566.87, covering 10 cows and also 28½ acres of wheat growing on their farm.

November 25, 1930, Raymond Schestag, August Schestag and Mrs. John Schestag gave a chattel mortgage to the Coopersville State Bank for $789.24, covering horses and agricultural implements and one black Holstein 9 years old; one red and white Guernsey-Jersey cow 10 years old; one black and

white grade Holstein 8 years old; one black and white grade Holstein 7 years old; one black and white grade Holstein 5 years old; three pure bred yearling Holsteins; and two grade Holstein yearlings.

November 20, 1931, at the time the chattel mortgage was given to Seth and Mary Nibbelink, Raymond Schestag testified he was not at home, that this chattel mortgage was brought over to another farm for him to sign, and that he told Seth Nibbelink at the time, which testimony is not disputed, there were already other chattel mortgages upon the property mortgaged.

Neither the conditional sales contract nor any of the chattel mortgages given to Seth Nibbelink, or to him and his wife, are shown to have been filed or recorded; but the chattel mortgages given to the Coopersville Cooperative Elevator Company and the Coopersville State Bank above mentioned were filed under the laws then existing in the office of the township clerk, and, after the passage of Act No. 18, Pub. Acts 1934 (1st Ex. Sess.), affidavits renewing such chattel mortgages were filed in the office of the register of deeds of Ottawa county.

The chattel mortgage given by Raymond Schestag to Seth and Mary Nibbelink August 28, 1935, for $1,400 covered 30 acres of corn, being all the corn growing on the mortgagor's farm, and 1½ acres of potatoes, a wagon and a brooder. It provided:

"Said second parties shall have the right to harvest said crops and dispose of the same at the then market value of said crops and apply the proceeds on the indebtedness of this mortgage after deducting the costs of said harvesting, if any."

After the execution of this mortgage, September 6, 1935, Raymond Schestag filed a petition in bank-

ruptcy in the United States district court for the western district of Michigan. All of the cows on the farm were scheduled as assets in the bankruptcy proceedings.

October 11, 1935, the Coopersville Cooperative Elevator Company assigned, in consideration of one dollar and other good and valuable considerations, a certain chattel mortgage filed in the office of the register of deeds of Ottawa county, "together with the obligation therein mentioned, and the moneys now due, and the interest that may hereafter grow due thereon." October 14, 1935, the Coopersville State Bank executed a petition for a reclamation of the property covered by the chattel mortgage given to the Coopersville Cooperative Elevator Company and assigned to it, and by the chattel mortgage given to it.

November 29, 1935, the referee in bankruptcy of the United States district court for the western district of Michigan entered an order abandoning this chattel-mortgaged property.

In December, 1935, after the order of abandonment above mentioned was entered by the referee in bankruptcy, the cashier of the Coopersville State Bank sold the property at private sale to Gemmen Brothers, who are made defendants herein.

It does not appear when the claims were filed in bankruptcy by Seth Nibbelink and Mary Nibbelink, but it does appear they presented claims in bankruptcy and that such claims were duly proved and allowed March 16, 1936. Among other claims presented and allowed were those of Seth Nibbelink for $590, Seth and Mary Nibbelink for $400, and Seth and Mary Nibbelink for $626.32. All of these were proved and allowed as secured claims.

October 1, 1936, Seth Nibbelink and Mary Nibbelink assigned to Henry Nibbelink, plaintiff herein,

all of their right, title and interest in or to any claims which they might have against the ''Coopersville State Bank, a corporation, John Gemmen, Albert Gemmen and Raymond Schestag, or against either or any of them for the conversion by them or any of them of 17 cows belonging to us or either of us on the so-called Schestag farm in Allendale township, Ottawa county, Michigan and also any and all claims we have or either of us has arising out of chattel mortgage executed by August Schestag and Raymond Schestag bearing date of 20th day of November, 1931, to Seth Nibbelink and Mary Nibbelink, and title note executed by said August and Raymond Schestag bearing date of July 2, 1929, to Seth Nibbelink and covering said cows heretofore mentioned.''

October 7, 1936, this suit was commenced. It is claimed defendants converted property which belonged to plaintiff and property on which he had a prior lien.

(a) It is conceded that when one by a trespass takes the property of another and sells it, he is liable for the conversion; that no demand is necessary, and the question of good faith or bad faith is not necessarily involved. *Kenney* v. *Ranney,* 96 Mich. 617.

(b) Upon an adjudication of bankruptcy and the appointment of a trustee in bankruptcy, such trustee becomes vested with the title of the property of the bankrupt. He takes no title to property sold to the bankrupt under a contract retaining title in the seller though the property may be in the possession of the bankrupt. Whether the instrument relied upon by plaintiff of July 2, 1929, was or was not a conditional sales contract must be determined by the State law. In this case, plaintiff's assignors began no reclamation proceedings in the

United States court to recover the property claimed upon the ground it belonged to them. On the other hand, plaintiff's assignors presented their claim based upon that instrument to the referee in bankruptcy as a secured claim and procured its allowance as such. By so doing, they waived their right to return of the property, elected to treat the title as having passed to the bankrupt, waived their right to assert that their claim was for specific property, and elected to treat their claim as security against the property of the bankrupt. *H. G. Vogel Co.* v. *Original Cabinet Corp.*, 252 Mich. 129; *Galion Iron Works & Manfg. Co.* v. *Service Coal Co.*, 264 Mich. 298.

(c) What would be the effect of plaintiff's assignors taking a judgment on the security which they had, or upon the title-retaining note in question, in the State court? Under all the authorities, if plaintiff's assignors had taken judgment in the State court for the purchase price of the cows, they would have elected to pass the title thereto and to their increase, if that is important, to the purchasers. Plaintiff would be entitled, under the law of this State, if the contract was a purely conditional sale, to elect whether he would claim the property or the purchase price. He would not be entitled both to the property and to the purchase price; and by electing to take judgment against the purchaser for the purchase price, he would elect to pass title to the property to the purchaser thereof. *Burroughs Adding Machine Co.* v. *Wieselberg, supra; In re Petition for Dissolution of Parkstone Apartment Co., supra; Mills Novelty Co.* v. *Morett, supra.*

The referee in bankruptcy, upon the petition of the Coopersville State Bank, undoubtedly concluded the bankrupt had no equity in the chattel-mortgaged

property and entered an order abandoning it. This, he had a right to do. 8 C. J. S. p. 918. Thereupon, the parties were relegated to their rights under the law of the State.

(d) The question then comes to this, the priority of lien as between the parties hereto. There is no question neither the so-called title-retaining note of July 2, 1929, nor the chattel mortgages given by the mortgagors to the Nibbelinks were filed or recorded; and that the chattel mortgages given by the mortgagors to the Coopersville Cooperative Elevator Company and the Coopersville State Bank were filed and kept in force by renewal affidavits. As between mortgages, neither of which is recorded, priority is ordinarily determined by priority of execution. 11 C. J. p. 649. In this case, both the chattel mortgage given to the Coopersville Cooperative Elevator Company and the chattel mortgage given to the Coopersville State Bank had priority of execution over the chattel mortgages given to the Nibbelinks. But this rule does not apply as to the so-called title-retaining contract. Under statutes providing that a mortgage shall be absolutely void as against subsequent mortgagees in good faith unless filed or recorded or accompanied by a change of possession, an unfiled chattel mortgage is postponed to the lien of a subsequent mortgage taken in good faith, although the latter mortgage is not filed or recorded, although the first mortgage is filed before the second is filed. 11 C. J. p. 649; *Lingle v. Owosso Sugar Co.,* 139 Mich. 203. The chattel mortgages held by the Coopersville State Bank must be held to have priority over the title-retaining contract which plaintiff's assignors elected to treat as security and over the chattel mortgages given to plaintiff's assignors.

(e) Plaintiff contends, however, the chattel mortgages were not properly foreclosed. All of the chattel mortgages involved herein contained a provision that in case of default upon the part of the mortgagors, the property might be sold by the mortgagee either at public or private sale, providing if there was a public sale three days' notice should be given according to some of the mortgages, and five days' notice should be given according to others; that the party foreclosing should have a right to reimburse himself for the amount of his claim from the proceeds of the sale, rendering the surplus, if any there should be, to the mortgagors. Upon the abandonment of the property under the order of the referee in bankruptcy in the United States district court for the western district of Michigan, the cashier of the Coopersville State Bank took possession of the property and sold it at private sale. This power of private sale must be strictly pursued and fairly executed. *Manwaring* v. *Jenison,* 61 Mich. 117. No notice of this sale was given, and, under the terms of the chattel mortgages foreclosed, no notice was necessary. *Rose* v. *Page,* 82 Mich. 105; *Fitzgerald* v. *McCandlish,* 89 Mich. 400. There is nothing herein to indicate the sales were not *bona fide.*

Though plaintiff may have had a right to redeem from such sale, it would be a condition precedent to the exercise of such right of redemption that he pay and discharge the liens of defendants, and, inasmuch as the property did not bring sufficient to discharge defendants' liens and plaintiff is not asking to redeem, the judgment of the trial court is affirmed, with costs.

WIEST, C. J., and BUSHNELL, SHARPE, CHANDLER, NORTH, and McALLISTER, JJ., concurred. BUTZEL, J., took no part in this decision.